IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Edward Angelo Bonaldi, ) | |
| ) | Civil Action No. 2:15-cv-00344-PMD-MGB |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Allison-Smith Company LLC and ) | |
| International Brotherhood of Electrical ) | |
| Workers Local 776, ) | |
| ) | |
| Defendants. ) | |

The Plaintiff, proceeding *pro se*,[1] brought this action against Defendants Allison-Smith Company LLC ("A-S" or "Allison-Smith")[2] and Local Brotherhood of Electrical Workers Local 776 (the "Local 776" or the "Union"). This matter is before the Court upon two motions filed by Defendant Allison-Smith: a Motion for Judgment on the Pleadings (Dkt. No. 23) and a Motion to Exclude the Affidavit of Edward Bonaldi and Accompanying Exhibits (Dkt. No. 47).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The Plaintiff brought the instant action on or about January 26, 2015. (*See generally* Dkt. No. 1.) Defendant Local 776 filed an Answer on May 4, 2015; Defendant Allison-Smith filed an Answer on May 6, 2015. (*See* Dkt. No. 12; Dkt. No. 17.) On June 8, 2015, Defendant Allison-Smith filed a Motion for Judgment on the Pleadings. (Dkt. No. 23; *see also* Dkt. No. 24.) Plaintiff filed a Response in Opposition to Allison-Smith's Motion for Judgment on the Pleadings on or about July 13, 2015,

---

[1]Although Plaintiff is proceeding *pro se*, it appears he has the assistance of an attorney. (*See, e.g.*, Dkt. No. 37-1 at 35 of 35.)

[2]Plaintiff refers to Defendant Allison-Smith Company LLC as the "defendant employer." (*See* Compl. ¶ 2.)

1

2:15-cv-00344-PMD-MGB     Date Filed 02/01/16     Entry Number 54     Page 2 of 18

to which Defendant Allison-Smith filed a Reply. (Dkt. No. 37; Dkt. No. 44.) On August 19, 2015, Defendant Allison-Smith filed a Motion to Exclude the Affidavit of Edward Bonaldi and Accompanying Exhibits; Plaintiff has not responded to that motion. (Dkt. No. 47.)

## ALLEGED FACTS

The instant action arises out of Plaintiff's employment at projects in Moncks Corner and North Charleston. (*See generally* Dkt. No. 1.) Plaintiff alleges that on March 1, 2014, Defendant Allison-Smith and the Local 776 "entered into the Inside Construction Agreement," also referred to as the "collective bargaining agreement, and the Small Works Addendum" to the collective bargaining agreement, which covered employees including Plaintiff. (Compl. ¶ 5.)[3] According to Plaintiff, the collective bargaining agreement and the small works addendum "were entered into for the benefit of the employees in the bargaining unit, and Plaintiff, as a member of the bargaining unit, is . . . entitled to the benefit of the agreement and to enforce the provisions of the agreement and any valid small works addendum." (*Id*.) Plaintiff further alleges as follows:

> 6. Pursuant to the collective bargaining agreement, the grievance and adjustment of an employment dispute shall first be adjusted by the duly authorized representatives of each of the parties to the agreement. If they are unable to adjust the matter within 48 hours, they shall refer the matter to the Labor-Management Committee. Should the Labor-Management Committee fail to agree or to adjust any matter it shall be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding.
>
> 7. Pursuant to the small works addendum, the grievance and adjustment of an employment dispute covered by that addendum shall be heard by the "Carolinas Small Works" Labor-Management Committee. In the absence of a deadlock, the Carolinas Small Works Labor-Management Committee's decision shall be final and binding.

---

[3]Plaintiff alleges that he "disputed and continues to dispute the validity of the small works addendum and its application" to either of the two projects upon which Plaintiff worked. (Compl. ¶ 8.) That dispute is not material to resolving the pending motions.

2

(Compl. ¶¶ 6-7.) Plaintiff alleges that, pursuant to the terms of the collective bargaining agreement and small works addendum, "the defendant employer could not discharge him from his employment without proper cause." (Compl. ¶ 11; *see also* Compl. ¶¶ 9-10.)

Plaintiff alleges that, in breach of the collective bargaining agreement and small works addendum, he was terminated "without proper cause." (*See* Compl. ¶ 37.) While Defendant Allison-Smith contends Plaintiff was laid off with eligibility for rehire, Plaintiff asserts the "so called lay off was not a lay off at all, and was a mere pre-text for termination without proper cause." (*Id.*) Plaintiff alleges the "real reasons" he was laid off were as follows:

> a) having unwittingly exposed the fact that the Allison-Smith General Foreman, Clyde, had instructed an apprentice to enter a level 3 clean room to conduct un-contained cutting in violation of the General Contractor's clean room procedures which as an employee he was instructed to bring to the attention of the apprentice and if necessary any other person capable of instructing him to come into compliance, and the General Foreman wanted to get rid of him out of concern this fact might be disclosed to the General Contractor or worse, the owner, and b) because he brought to light other violations of policy and procedure and safety concerns, including, the violation of the lift safety procedures.

(Compl. ¶ 38.) Plaintiff alleges that these two reasons "are not proper causes for termination as [Plaintiff] was only following the policies and procedures he was instructed to abide by and to raise attention to should he observe them being violated." (*Id.*) Plaintiff details several allegations which he contends "support[s] . . . his argument that the lay off . . . was not a real lay off but a pretext for his termination without proper cause." (*See* Compl. ¶ 40.)[4] Plaintiff further alleges that he "has exhausted all internal grievance procedures" but asserts he "should not be bound by the final and binding decision of the Local Labor Management Committee because his Local [776] violated its duty of fair representation." (*Id.*)

---

[4]The undersigned notes that Plaintiff's Complaint contains a few paragraphs numbered 40. (*See* Compl. at 12-14 of 19.) For ease of reference, however, the undersigned uses Plaintiff's numbering in the instant Report and Recommendation.

3

In the "unfair representation" count of his Complaint, alleges the Local 776 violated its duty of "fair representation." (Compl. ¶¶ 41-48.) Plaintiff alleges that he "and his Local Business Manager, Chuck Moore, have a past wherein Mr. Moore acted in an unbrotherly manner" towards Plaintiff. (*Id.* ¶ 42.) Plaintiff details several allegations which he contends "support his position that Local 776 . . . violated their duty of fair representation." (*Id.* ¶ 43.) In addition to the "act . . . relate[d] to the handling of his grievance, Plaintiff contends that Mr. Moore was complicit and actually assisted Allison-Smith in violating his rights under the collective bargaining agreement." (*Id.* ¶ 44.) Plaintiff "contends the Local [776] is equally liable to him for his lost wages and benefits" due to the Local 776's "actions or lack thereof." (*Id.* ¶ 47.)

Plaintiff alleges that Defendant Allison-Smith is liable to him "for breach of the collective bargaining agreement" and that Defendant Local 776 is liable to him "for unfair representation." (*See* Compl. at 18 of 19.) Plaintiff seeks damages for "lost wages and benefits, together with post judgment interest, jointly and severally against" Allison-Smith and the Local 776. (*Id.*)

## DISCUSSION

As noted above, Plaintiff brings a claim for breach of a collective bargaining agreement against Defendant Allison-Smith. The pending motions are addressed below.

A. Motion for Judgment on the Pleadings (Dkt. No. 23)

1. Applicable Law

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). A motion for judgment on the pleadings pursuant to Rule 12(c) is analyzed under the same standard as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002) (citations omitted). The court assumes the facts alleged in the complaint are true and will draw all reasonable inferences in Plaintiff's favor as the nonmoving party. *Id.* at 406 (citation omitted).

4

However, the court must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). While the court must draw all reasonable inferences in favor of the plaintiff, it need not accept the "legal conclusions drawn from the facts, . . . unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Giarratano v. Johnson*, 521 F.3d 298 (4th Cir. 2008)).

2.  Analysis

Defendant Allison-Smith seeks judgment on the pleadings, asserting that in order to prevail, Plaintiff must prove "*both* 1) that the union breached its duty of fair representation and 2) that his employer violated the collective bargaining agreement." (Dkt. No. 23-1 at 7.) According to Allison-Smith, Plaintiff's Complaint "does not state a plausible claim for the Union's breach of the Duty of Fair Representation because the acts he alleges were not arbitrary, discriminatory, or in bad faith, nor did they contribute to an erroneous outcome." (Dkt. No. 23-1 at 7.) Additionally, Allison-Smith asserts that Plaintiff's Complaint "does not state a plausible claim for breach of the Collective Bargaining Agreement because he admits that it places 'no restrictions' on Allison Smith's discretion to terminate." (Dkt. No. 23-1 at 12.)

"It has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983) (citing *Smith v. Evening News Ass'n*, 371 U.S. 195 (1962)). The Court in *DelCostello* further explained,

> Ordinarily, . . . an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. Subject to very limited judicial review, he will be bound by the result according to the finality provisions of the agreement. In *Vaca* and *Hines*, however, we recognized that this rule works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. In such an instance, an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding. Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. Yet the two claims are inextricably interdependent. To prevail against either the company or the Union, . . . employee-plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union. The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. The suit is thus not a straightforward breach of contract suit under § 301, . . . but a hybrid § 301/fair representation claim, amounting to a direct challenge to the private settlement of disputes under the collective-bargaining agreement.

*DelCostello*, 462 U.S. at 163-65 (citations and internal quotation marks omitted); *see also Vaca v. Sipes*, 386 U.S. 171 (1967); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976). In order for Plaintiff's Complaint to state a claim against Defendant Allison-Smith, Plaintiff must allege both "that the employer's action violated the terms of the collective-bargaining agreement and that the union breached its duty of fair representation." *Chauffers, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990) (citing *DelCostello*, 462 U.S. at 164-65); *see also Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 656 (4th Cir. 2002) ("Though both claims are brought in one suit, a cause of action 'will only lie against an employer if the union has breached its duty of fair representation of the employee.'" (quoting *Amburgey v. Consolidation Coal Co.*, 923 F.2d 27, 29 (4th Cir. 1991))). Accordingly, the question for this Court is whether Plaintiff's Complaint states a claim for both. *See Thompson*, 276 F.3d at 657 ("[The plaintiff's] claims against the Union and Alcoa are 'interlocked: neither claim is viable if the other fails.'" (quoting *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 (7th Cir. 1997))).

a. Duty of Fair Representation[5]

As the Fourth Circuit noted in *Thompson*,

> It is well established that unions, as exclusive bargaining agents in the negotiation, administration and enforcement of collective bargaining agreements, have an implicit duty "to serve the interests of all members without hostility or discrimination toward any, to exercise [their] discretion with complete good faith and honesty, and to avoid arbitrary conduct."

*Thompson*, 276 F.3d at 657 (quoting *Vaca*, 386 U.S. at 177). A breach of the duty of fair representation "occurs 'only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.'" *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372 (1990) (quoting *Vaca*, 386 U.S. at 190). "[M]ere negligence, even in the enforcement of a collective-bargaining agreement," does not state a claim for breach of the duty of fair representation. *Id.* at 372-73. As the Fourth Circuit in *Thompson* explained,

> Whether a union acted arbitrarily, discriminatorily or in bad faith requires a separate analysis, because each of these requirements represents a distinct and separate obligation. . . . To be "arbitrary," a union's conduct towards its member must be so far outside a wide range of reasonableness that it is wholly irrational. . . . While the analysis of whether a union's actions were arbitrary looks to the objective adequacy of that union's conduct, the analysis of discrimination and bad faith must focus on the subjective motivation of the union officials.

*Thompson*, 276 F.3d at 657-58 (citations omitted). In addition to alleging that "the union handled his grievance perfunctorily or in bad faith," a plaintiff must also allege "that 'there is substantial reason to believe that a union breach of duty contributed to an erroneous outcome in the contractual proceedings.'" *Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411 (4th Cir. 1986) (quoting *Hardee v. N.C. Allstate Servs., Inc.*, 537 F.2d 1255, 1258 (4th Cir. 1976)).

---

[5] "[A]n employee 'must prevail upon his unfair representation claim before he may even litigate the merits of his § 301 claim against the employer.'" *Thompson*, 276 F.3d at 656-57 (quoting *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 67 (1981) (Stewart, J., concurring)).

As noted above, Allison-Smith asserts Plaintiff "does not state a plausible claim for the Union's breach of the Duty of Fair Representation because the acts he alleges were not arbitrary, discriminatory, or in bad faith, nor did they contribute to an erroneous outcome." (Dkt. No. 23-1 at 7.) To evaluate that argument, the undersigned examines Plaintiff's allegations. Plaintiff alleges, *inter alia*, that on July 24, 2014, he arrived at work at the MNK Project at 7:00 A.M. and received an assignment from the foreman. (Compl. ¶¶ 24, 12.) Plaintiff states that at 9:25 A.M., the foreman came to see Plaintiff and told Plaintiff "he had to take him to see the union steward." (Compl. ¶ 24.) When Plaintiff met with the union steward, the union steward "informed Plaintiff that he was being laid off" and handed Plaintiff "a Notice of Termination which indicated 'Lay Off due to Job Completed and Reduction in Force' and that [Plaintiff] was eligible for rehire." (*Id.*) According to Plaintiff, this procedure was "odd and not industry standard as most legitimate layoffs occur at the end of the day, the work they were performing was not completed, and [Plaintiff] was not allowed to tag out of his lock box." (Compl. ¶ 25.) Plaintiff alleges that when he asked if he was the only one being laid off, the union steward lied and said, "Oh no, I have to come back and get a bunch more." (Compl. ¶ 25.) According to Plaintiff, however, "no one else was laid off that day." (*Id.*)

Plaintiff alleges that he then called the Local 776's Office Manager "and asked her if there were any calls left in the hall," and she indicated that "there were 2 calls, including one for the MNK Project for the same position he had just been laid off from." (Compl. ¶ 26.) Plaintiff states that he told the Office Manager to "hold that referral and he would come in to the hall to take it." (*Id.*) Plaintiff further alleges,

> 27. Rather than simply giving Plaintiff the referral and sending him out to the site as is customary and as had previously been done, the Office Manager, instead emailed his credentials out to Allison-Smith which responded that they were rejecting him under Section 4.03 of the collective bargaining agreement which states that the employer shall have the right to reject any applicant for employment.
>
> 28. Plaintiff immediately asked to speak to the Local's Business Manager, Chuck Moore. Plaintiff asked him if he was aware of the clean room incident and about how

8

> odd it was that it was a morning layoff and his foreman knew nothing about it. Plaintiff also informed [Moore] that the Union Steward had informed [Plaintiff] that there were others that had been laid off with him. Mr. Moore failed to make any calls or make any inquiries to investigate the situation and said that Allison-Smith had the right to lay him off and reject him for any reason. Plaintiff informed Mr. Moore that he wanted to file a grievance and explained that he no longer resided in that area, but in Dallas, Texas, and that this was an extreme financial strain for him having to come up to South Carolina to take a job only to be laid off and rejected in one day for reasons he believed were pretextual. Mr. Moore did not provide Plaintiff with a grievance form or offer to file a grievance on his behalf but merely said Allison-Smith was within their rights.

(Compl. ¶¶ 27-28.)

Plaintiff alleges that he then "accepted another call in the hall with Allison-Smith at the CIA Trip Project." (*Id.* ¶ 29.) Plaintiff arrived at the CIA Trip Project at approximately 6:20 A.M. on July 28, 2014. (*Id.* ¶ 30.) However, shortly after 6:45 A.M., when "someone arrived to unlock the door to Allison-Smith's trailer," Plaintiff "was asked to step outside and was handed another Notice of Termination which indicated he was being laid off due to 'Job Completion' and was again eligible for rehire." (*Id.*) Plaintiff alleges he was handed a check. (*Id.*)

According to Plaintiff, he returned to the hall and asked to speak with Moore but was advised that Moore was out of town. (*Id.* ¶ 31.) Plaintiff alleges that he "checked the referrals in the hall and there was still one for the MNK Project with Allison-Smith." (*Id.*) Plaintiff then had his attorney send an email to Mr. Moore indicating Plaintiff's desire to file a grievance. (*Id.* ¶ 32.) Plaintiff further alleges that he called the night recorder on July 30, 2014, and "learned there were 18 calls for the MNK Project for the same position he had held." (*Id.* ¶ 33.) On July 31, 2014, Plaintiff asked the Office Manager to "submit his credentials again to Allison-Smith," but Plaintiff asserts she called back shortly thereafter and "informed [Plaintiff] that [Allison-Smith] had again rejected him." (*Id.*) Plaintiff alleges he "had been blacklisted" and looked for work elsewhere. (*Id.*)

9

In addition to alleging that Moore "acted in an unbrotherly manner" towards Plaintiff, (*see* Compl. ¶ 42), Plaintiff alleges the following "in support of his position that Local 776 has violated their duty of fair representation":

> a. Mr. Moore refused to acknowledge at any time that there was anything odd about his alleged layoff from the MNK Project and the subsequent lay off and rejections when he knew there was;
>
> b. Mr. Moore refused to immediately inquire into the situation after being instructed to do so by Plaintiff on July 24, 2014, even though he knew and understood there were unusual circumstances surrounding the alleged lay off, even though the collective bargaining agreement required him to attempt to adjust the situation and if they are unable to do so within 48 hours the matter should be referred to the Labor-Management Committee, and even though there was a very limited window to prepare and submit a grievance;
>
> c. Mr. Moore indicated he would look into the situation but that there was nothing he could do about it because Allison-Smith had the right to lay off and reject under the contract;
>
> d. Mr. Moore made himself unavailable to Plaintiff after the second lay off on July 28, 2014, until after he had been contacted by Plaintiff's attorney complaining on behalf of Plaintiff of his lack of action or response to Allison-Smith's blatant actions thus far;
>
> e. Rather than responding that he had already looked into the situation and confirmed again that there was nothing he could do, nor that he would file a written grievance on behalf of Plaintiff, Mr. Moore appeared to be implying in his written response, that Plaintiff had not already brought his desire to file a grievance to his attention;
>
> f. Mr. Moore made no attempt to adjust Plaintiff's grievance within the required 48 hours or prior to being contacted by Plaintiff's attorney;
>
> g. Mr. Moore refused to answer Plaintiff's question as to whether it was the Local and International Union's position that the employer could terminate an employee without proper cause;
>
> h. Mr. Moore knew I was not laid off due to a reduction in force or because the job had been completed at either job site;
>
> i. Mr. Moore failed to provide me with a grievance form when I requested one from him;
>
> j. Mr. Moore's actions caused me to doubt whether he was acting in my best interest and to allege unfair representation;

10

> k. Mr. Moore made no real attempt to investigate or prepare to file my grievance and I was forced to have my attorney attempt to investigate and prepare my grievance;
>
> l. Mr. Moore did eventually file the grievance my attorney had prepared, but never acknowledged to Plaintiff that he had a meritorious grievance, and only filed after he was instructed to do so by counsel and allegations of unfair representation had already been raised;
>
> m. Mr. Moore made no real attempt to interview or obtain statements from any of the potential witnesses who could have provided evidence at the time of the hearing;
>
> n. Mr. Moore [made] no attempt to contact Plaintiff and discuss his grievance or strategy for the grievance hearing until a couple of days before the grievance was scheduled to be heard;
>
> o. Mr. Moore failed to argue at the time of the hearing that Plaintiff's grievance had merit or that there were in deed [sic] unusual circumstances surrounding the alleged lay off;
>
> p. Mr. Moore failed to present any witnesses or statements of witnesses at the grievance hearing in an attempt to corroborate Plaintiff's allegations;
>
> q. Mr. Moore failed to present the one statement he did obtain from the apprentice which confirmed that he had been performing un-contained cutting in a level 3 clean room and that he had been instructed to do so by his General Foreman even though Plaintiff had specifically requested that he introduce it at the hearing;
>
> r. Mr. Moore made no attempt to force Allison-Smith to admit the reasons for Plaintiff's lay off were as he alleged nor to provide an explanation for their bizarre actions;
>
> s. Mr. Moore failed to say a single word to Plaintiff after the grievance proceedings had concluded and drove right past him and his luggage as he stood outside waiting for a cab to return to the airport[.]

(Compl. ¶ 43.) Additionally, Plaintiff alleges that Moore "was complicit and actually assisted Allison-Smith in violating his rights under the collective bargaining agreement by failing to refer him out on a call rather than putting Allison-Smith on notice that they were going to send him back out and give them the opportunity to reject him." (*Id*. ¶ 44.)

In their Motion for Judgment on the Pleadings, Allison-Smith asserts that Plaintiff "brings forth no facts which can reasonably be interpreted as demonstrating arbitrary, discriminatory, or bad

11

faith behavior on the Union's part." (Dkt. No. 23-1 at 9.) Allison-Smith instead characterizes Plaintiff's allegations as "petty, unreasonable, and/or frivolous." (*Id.*) Allison-Smith asserts that Plaintiff "does not specifically allege that any aspect of Moore's behavior was arbitrary, discriminatory, or taken in bad faith," and "[m]ore important[ly], . . . does not explain how any of these alleged breaches contributed to an erroneous outcome in the adjudication proceedings." (Dkt. No. 23-1 at 10.)

Although Defendant Allison-Smith has vigorously argued that Plaintiff failed to plead facts sufficient to state a plausible claim that the Local 776 breached its duty of fair representation, the undersigned disagrees.[6] As noted by the Fourth Circuit, "[t]he phrase 'duty of fair representation' is a legal term of art, incapable of precise definition," and "[w]hether a union breached its duty of fair representation depends upon the facts of each case." *Griffin v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW*, 469 F.2d 181, 182 (4th Cir. 1972) (citations omitted). While some courts have found that "the delay in the processing of . . . grievances and [the union's] failure to adhere to the deadlines established" by the collective bargaining agreement does not constitute a breach of the duty of fair representation, *see Samosky v. United Parcel Serv.*, 944 F. Supp. 2d 479, 509-10 (S.D. W. Va. 2013), the Fourth Circuit has stated that "[m]alicious or egregious delay in pursuing plaintiffs' rights can violate the *Vaca* proscription," *Walker v. Consol. Freightways, Inc.*, 930 F.2d 376, 382 (4th Cir. 1991). Furthermore, "[w]hile negligence in handling grievances has not been identified as breaching the union's duty of fair representation, the courts have adopted the position that a union may not arbitrarily ignore a meritorious grievance or handle it in a perfunctory manner." *Griffin*, 469 F.2d at 183 (citations omitted); *see also DelCostello*, 462 U.S. at 164 (union acting in "perfunctory" fashion may breach duty of fair representation);

---

[6]The undersigned notes that many of the cases relied upon by Defendant address motions for summary judgment, not motions pursuant to Rule 12. *See, e.g., Ash v. United Parcel Service, Inc.*, 800 F.2d 409 (4th Cir. 1986) (summary judgment); *Batton v. Commc'ns Workers of Am., AFL-CIO*, Civ. A. No. 2:13CV426, 2014 WL 5742409 (E.D. Va. Aug. 4, 2014) (summary judgment); *Williams v. Air Wisconsin, Inc.*, 874 F. Supp. 710 (E.D. Va. 1995) (summary judgment).

*Thompson*, 276 F.3d at 658 ("As long as a union does not arbitrarily ignore a meritorious grievance or handle it in a perfunctory manner, that union has not violated its duty of fair representation.").

A fair reading of Plaintiff's Complaint indicates that Plaintiff alleges the union handled Plaintiff's grievance in a perfunctory manner, thereby breaching its duty of fair representation, and that this breach contributed to an erroneous outcome in the contractual proceedings. Plaintiff alleges that he was terminated without proper cause for, *inter alia*, exposing various safety violations, but that the union "failed to argue at the time of the hearing that Plaintiff's grievance had merit or that there were in deed [sic] unusual circumstances surrounding the alleged lay off." (Compl. ¶¶ 38, 43.) Plaintiff also alleges that, as a "result of the Local Union's actions or lack thereof, . . . the Local [776] is equally liable to him for his lost wages and benefits." (Compl. ¶ 47.)  Accordingly, the undersigned recommends concluding that Plaintiff pled sufficient facts to state a claim for a breach of the duty of fair representation. *See Carpenter v. W. Va. Flat Glass, Inc.*, 763 F.2d 622, 625 (4th Cir. 1985) (finding that the union breached its duty of fair representation by failing to contact the employee's doctor, where the critical issue in the employee's claim for reinstatement turned explicitly on whether he was physically able to work at the plant); *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582-83, 585 (6th Cir.1994) (finding that the union breached its duty of fair representation where the union's representative had completely failed to investigate the site of the accident underlying the employee's discharge, and where the union had failed to call "the one witness who could have effectively and objectively corroborated [the employee's] testimony on a vital matter").

   b. Breach of Collective Bargaining Agreement

Even if Plaintiff alleges sufficient facts to state a claim that the Local 776 breached its duty of fair representation, Defendant Allison-Smith may still be entitled to dismissal: if Plaintiff failed to allege facts sufficient to state a claim that Allison-Smith violated the collective bargaining agreement, Defendant Allison-Smith's Motion for Judgment on the Pleadings should be granted. *See Chauffers, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990). Allison-Smith

13

argues that Plaintiff "does not state a plausible claim for breach of the Collective Bargaining Agreement because he admits that it places 'no restrictions' on Allison-Smith's discretion to terminate." (Dkt. No. 23-1 at 12.) Allison-Smith further contends that Plaintiff's claim fails because the arbitrator's decision "was final and binding." (*Id*. at 12-13.)

To the extent Allison-Smith argues that Plaintiff's claim fails because the arbitrator's decision "was final and binding," the undersigned disagrees. In his Complaint, Plaintiff recognizes the arbitrator's authority. As noted above, Plaintiff explains the collective bargaining agreement as follows:

> 6. Pursuant to the collective bargaining agreement, the grievance and adjustment of an employment dispute shall first be adjusted by the duly authorized representatives of each of the parties to the agreement. If they are unable to adjust the matter within 48 hours, they shall refer the matter to the Labor-Management Committee. Should the Labor-Management Committee fail to agree or to adjust any matter it shall be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding.
>
> 7. Pursuant to the small works addendum, the grievance and adjustment of an employment dispute covered by that addendum shall be heard by the "Carolinas Small Works" Labor-Management Committee. In the absence of a deadlock, the Carolinas Small Works Labor-Management Committee's decision shall be final and binding.

(Compl. ¶¶ 6-7; *see also* Dkt. No. 24-1 at 5-6 of 37; Dkt. No. 24-2 at 2 of 15.) He also alleges, however, that "he should not be bound by the final and binding decision of the Local Labor Management Committee because his Local [776] violated its duty of fair representation." (Compl. ¶ 40.)

Allison-Smith appears to argue that because the collective bargaining agreement contains an arbitration provision, and Plaintiff's grievance was in fact arbitrated, Plaintiff's claim for breach of the collective bargaining agreement fails. To the extent it makes such an argument, Allison-Smith is incorrect. In *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976), the Supreme Court addressed such an argument, stating,

14

> Even though under *Vaca* the employer may not insist on exhaustion of grievance procedures when the union has breached its representation duty, it is urged that when the procedures have been followed and a decision favorable to the employer announced, the employer must be protected from relitigation by the express contractual provision declaring a decision to be final and binding. We disagree. The union's breach of duty relieves the employee of an express or implied requirement that disputes be settled through contractual grievance procedures; if it seriously undermines the integrity of the arbitral process the union's breach also removes the bar of the finality provisions of the contract.

*Hines*, 424 U.S. at 567.

Allison-Smith also argues that Plaintiff "does not state a plausible claim for breach of the Collective Bargaining Agreement because he admits that it places 'no restrictions' on Allison-Smith's discretion to terminate." (Dkt. No. 23-1 at 12.) But Plaintiff does not admit that at all. Plaintiff alleges the "defendant employer could not discharge him from his employment without proper cause under either the collective bargaining agreement or the small works addendum." (Compl. ¶ 11.) Allison-Smith, on the other hand, contends that neither the Collective Bargaining Agreement nor the Addendum "includes a so-called 'just cause' provision." (Dkt. No. 23-1 at 12.) The contractual provision at issue provides as follows:

> The Union understands the employer is responsible to perform the work required by the owner. The Employer shall, therefore, have no restrictions except those specifically provided for in the collective bargaining agreement, in planning, directing and controlling the operation of all his work, ***in hiring and laying off employees***, in transferring employees from job within the Local Union's geographical jurisdiction, in determining the need and number as well as the persons who will act as Foreman, in requiring all employees to observe the Employer's and/or owner's rules and regulations not inconsistent with this Agreement, and in requiring all employees to observe all safety regulations, and ***in discharging employees for proper cause***.

(Compl. ¶ 9 (emphasis added); *see also* Dkt. No. 24-1 at 7 of 37; Dkt. No. 24-2 at 2 of 15.)[7]

It appears to the undersigned that the contract indicates the employer shall "have no restrictions except those specifically provided for in the collective bargaining agreement . . . in hiring

---

[7]The document submitted by Defendant Allison-Smith does not match Plaintiff's version in every detail; however, the relevant provisions are identical.

and laying off employees . . . and in discharging employees for proper cause." (Compl. ¶ 9.) A fair reading of Plaintiff's Complaint indicates he alleges that although the termination slips he received indicated he was laid off, in reality he was not laid off but terminated without proper cause. (*See* Compl. ¶ 37.) Plaintiff has alleged facts to support that theory; for example, he alleges that although he was told he was laid off because the job was completed, he was terminated in the early morning hours, when he himself was in fact still working (and the job was therefore not complete), and because when he called the Local 776's Office Manager to ask if there were any calls left in the hall, she "informed him that there were 2 calls, including one for the MNK Project for the same position that [Plaintiff] had just been laid off from." (*See* Dkt. No. 1 at 12-14 of 19; *see also* Compl. ¶¶ 25-26, 29-30, 33.)

Allison-Smith focuses on the portion of the clause that indicates the employer shall "have no restrictions except those specifically provided for in the collective bargaining agreement . . . in hiring and laying off employees." (*See* Compl. ¶ 9). However, that same provision also indicates the employer "shall have no restrictions except those specifically provided for in the collective bargaining agreement . . . in discharging employees for proper cause." (*Id*.) In the opinion of the undersigned, the Plaintiff's allegations that he was discharged without proper cause in violation of the collective bargaining agreement do state a claim. The cases cited by Allison-Smith do not indicate otherwise. *Klein v. Jackson Voice Data, Inc.*, Civ. A. No. 92 Civ. 2993 (KC), 1993 WL 385773 (S.D.N.Y. 1993), does not discuss a provision pertaining to "discharging employees for proper cause." *See Klein*, 1993 WL 385773, at *2 n.5. One of the provisions mentioned in *Parsons Electric Co. v. National Labor Relations Board*, 976 F.2d 1167 (8th Cir. 1992), does more similarly match the provision in the case *sub judice*, as it also refers to "discharging Employees for proper cause." *See Parsons*, 976 F.2d at 1168 n.2. *Parsons*, however, does not interpret that particular provision. *See Parsons*, 976 F.2d 1167. In the opinion of the undersigned, Plaintiff has pled facts sufficient to

state a claim for breach of the collective bargaining agreement.[8] The undersigned therefore recommends denying Defendant Allison-Smith's Motion for Judgment on the Pleadings. (Dkt. No. 23.)

B. Motion to Exclude Affidavit (Dkt. No. 47)

Defendant Allison-Smith also filed a Motion to Exclude the Affidavit of Edward Bonaldi and Accompanying Exhibits. (*See* Dkt. No. 47.) Plaintiff did not file any opposition to this motion. Rule 12(d) provides as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

FED. R. CIV. P. 12(d). Because the undersigned has not relied upon the information contained in Plaintiff's Affidavit (or the accompanying exhibits), the undersigned recommends granting the Motion to Exclude the Affidavit of Edward Bonaldi and Accompanying Exhibits (Dkt. No. 47).

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Motion for Judgment on the Pleadings (Dkt. No. 23) filed by Defendant Allison-Smith Company LLC be DENIED and that the Motion to Exclude the Affidavit of Edward Bonaldi and Accompanying Exhibits (Dkt. No. 47) be GRANTED.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

February 1, 2016
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[8] Allison-Smith also argues that "even if the Court was inclined to analyze Plaintiff's layoff under a 'just cause' standard, his claim would still fail." (Dkt. No. 23-1 at 17.) The undersigned would not find as much at this stage of the lawsuit. The portions of the Complaint to which Allison-Smith points are Plaintiff's allegations concerning safety violations Plaintiff alleges he was required to report and/or correct. (*See* Compl. ¶¶ 18-24.)

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).